Elbert Wayne SMITH, Appellant,

v.

**MARYLAND CASUALTY COMPANY,**
Appellee.

No. 83–1699.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 13, 1984.

Decided Aug. 24, 1984.

Rehearing and Rehearing In Banc
Denied Sept. 24, 1984.

Kenneth M. Suggs, Columbia, S.C. (Suggs & Kelly, Columbia, S.C., on brief), for appellant.

Thornwell F. Sowell, III, Columbia, S.C. (Joel H. Smith, Nelson, Mullins, Grier & Scarborough, Columbia, S.C., on brief), for appellee.

Before WIDENER and HALL, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Elbert Wayne Smith appeals from a summary judgment that dismissed his action against Maryland Casualty Company on the ground that the company's refusal to settle an insurance claim was not, as a matter of law, unreasonable or in bad faith. We vacate the judgment and remand.

I

This case arose out of an automobile accident in which Timothy A. McNeese, driving his mother's car, severely and permanently injured Smith. McNeese was insured by a family policy issued by Maryland Casualty to McNeese's mother which provided coverage for three vehicles, all listed on the same policy. A separate premium appears to have been charged for each vehicle. The policy provided bodily injury liability coverage for each vehicle in the amount of $15,000 for each person and $30,000 for each occurrence. It also provided coverage for the operation of a non-owned vehicle. Maryland Casualty retained the right to settle any claims brought against its insured.

Smith filed a personal injury suit against McNeese in state court. Pursuant to the policy, Maryland Casualty provided counsel to defend the suit. McNeese also retained private counsel to represent him. Follow-

ing its investigation, Maryland Casualty offered to settle Smith's claim for $15,000, the amount it considered to be the policy limit.

Smith rejected Maryland Casualty's offer. Based on his belief that South Carolina law might allow stacking of coverage,[1] Smith's attorney offered to settle the claim for the policy limit as determined in a declaratory judgment action, which he contemplated would be decided ultimately by the South Carolina Supreme Court. He proposed entry of a consent judgment for $45,000. If the court allowed stacking of coverage, then the policy limit would be $45,000 and Smith would accept that amount as full and complete satisfaction of his judgment. If the court ruled that stacking was not allowed, then the policy limit would be $15,000 and Smith would accept that as full and complete satisfaction of the judgment.

Insisting that its coverage was $15,000, Maryland Casualty rejected Smith's offer, and the case was tried. The judge directed a verdict against McNeese on the issue of liability, and the jury returned a verdict of $152,500. Maryland Casualty maintained that it was obligated to pay only $15,000, leaving McNeese responsible for an unsatisfied judgment of $137,500. McNeese assigned his claim against Maryland Casualty to Smith, who brought this action, complaining that Maryland Casualty failed to act reasonably and in good faith when it rejected the proposed settlement.[2]

## II

■■■ South Carolina law controls this removed, diversity action. McNeese's claim against Maryland Casualty, which he assigned to Smith, is based on South Carolina's Tyger River doctrine. *See Tyger River Pine Co. v. Maryland Casualty Co.,* 170 S.C. 286, 170 S.E. 346 (1933), 163 S.C. 229, 161 S.E. 491 (1931). In *American Casualty Company of Reading, Pa. v. Howard,*

187 F.2d 322, 326 (4th Cir.1951), we stated that the Tyger River doctrine provides that "the insurer owes to the insured the duty of settling a personal injury claim covered by the policy if the settlement is the reasonable thing to do, or, that the insurer is liable to insured if the insurer's failure to settle is due to either fraud or bad faith or negligence." *See also Andrews v. Central Insurance Co.,* 271 F.Supp. 814, 820 (D.S. C.1967), *aff'd,* 391 F.2d 935 (4th Cir.1968). Issues of bad faith and negligence present questions for the jury. *Tyger River,* 170 S.C. at 293, 170 S.E. at 348. Moreover, it is proper to charge the jury "that it was the duty of [the insurance company] to compromise the claim if that was the reasonable thing to do ...." 170 S.C. at 293, 170 S.E. at 349.

Applying the Tyger River doctrine, the district court granted summary judgment for Maryland Casualty. It held that as a matter of law the insurance company acted reasonably. The major premise of the court's reasoning was based on its conclusion that *Nationwide Insurance Co. v. Bair,* 257 S.C. 551, 186 S.E.2d 410 (1972), precluded stacking. In answer to Smith's argument that notwithstanding *Bair* the South Carolina Supreme Court might allow stacking under the circumstances of this case, the court held, citing *Myers v. Government Insurance Co.,* 279 S.C. 70, 302 S.E.2d 331 (1983), that it was not, as a matter of law, unreasonable or in bad faith for an insurance carrier to refuse to concede a novel legal issue.

## III

The difficulty with the district court's decision is two-fold. First, in *Bair* the South Carolina Supreme Court did not decide whether stacking would be available in the context of the facts presented by McNeese's situation. *Bair* held that South Carolina law did not require stacking of uninsured motorist coverage or medical

---

**1.** Stacking involves multiplying the face limits of a policy by the number of listed vehicles to arrive at a higher limit of coverage.

**2.** The question whether rejection of the offer was justified on the basis of potential liability and damages is not an issue in this appeal.

payments, issues not presented by this appeal.[3]

Smith's counsel frankly conceded that dicta in *Bair* indicated that stacking liability coverage was impermissible. *Bair*, however, did not discuss coverage for the operation of nonowned vehicles. The South Carolina Supreme Court has since held that it is permissible to stack nonowned vehicle coverage. *Kraft v. Hartford Ins. Co.*, 279 S.C. 257, 305 S.E.2d 243 (1983).

At this point, we need not decide whether McNeese was entitled to stacking of the coverage afforded by the terms of the Maryland Casualty policy. Smith did not insist on stacking. Smith's offer proposed no more than the opportunity to determine through a declaratory judgment whether stacking was permissible. It is sufficient for us to conclude that the district court's major premise is flawed. *Bair*, dealing with uninsured motorist and medical payments coverage, did not definitively preclude stacking of either the liability or nonowned vehicle coverage afforded McNeese. This leads us to the second difficulty with the district court's opinion.

The district court's application of the principle that an insurance carrier is not to be faulted because it refused to concede a novel question of law was inappropriate. True, stacking of coverage afforded McNeese presented a novel question of law. But Smith did not ask Maryland Casualty to concede this novel question of law. He never insisted that settlement should be made on the assumption that the policy limits were $45,000 instead of $15,000. On the contrary, Smith's offer contemplated settlement within the policy limits, whatever they might be—either $45,000 or $15,000. He proposed only that the limits be ascertained by a South Carolina forum, rather than by the unilateral decision of the insurance carrier.[4] There is nothing unusual or novel about an action for a declaratory judgment to determine policy coverage. Cases of this nature are legion.

The conflict between the insurer's interest and that of the insured is obvious. By rejecting the offer, Maryland Casualty sought to limit its exposure to $15,000. But rejection of the offer potentially exposed McNeese to a judgment in excess of the policy limits. Had the offer been accepted, Maryland Casualty would not have had to pay more than the policy limits, as authoritatively determined by South Carolina courts, and McNeese would not have been subjected to a judgment in excess of the policy limits. In *Tyger River*, 170 S.C. at 292, 170 S.E. at 348, the Court explained the obligation of an insurer confronted by a conflict of interest. In this event, the Court said, an insurance company is "bound, under its contract of indemnity, and in good faith, *to sacrifice its interests in favor of those of the [insured]*" (emphasis in original). Of course, this does not mean that in every instance an insurer must accept an offer within policy limits, but it must act reasonably and in good faith.

■ In sum, we agree with the district court that Maryland Casualty's conduct is to be tested by the principles explained in *Tyger River*. Application of these principles, however, discloses that Maryland Casualty was not entitled to exoneration as a matter of law.

■ The judgment of the district court is vacated, and this case is remanded to the district court for consideration of other defenses raised by Maryland Casualty that are not presented by this appeal. If the court decides these issues adversely to the

---

**3.** We note that revision of the pertinent statute now allows stacking of some uninsured motorist coverage. *See Gambrell v. Travelers Insurance Co.*, 280 S.C. 69, 310 S.E.2d 814 (1983); *Garris v. Cincinnati Insurance Co.*, 280 S.C. 149, 155 n. 1, 311 S.E.2d 723, 727 n. 1 (1983).

In *Esler v. United Services Automobile Ass'n*, 273 S.C. 259, 263, 255 S.E.2d 676, 679 (1979), the Court, holding that additional personal injury protection could be stacked, said: "The crucial test to be applied in situations such as the present one is not the number of policies issued but rather the number of additional coverages which were separately contracted and paid for."

**4.** Smith's offer to have the policy limits determined in a declaratory judgment action distinguishes this case from *Clark v. Hartford Accident and Indemnity Co.*, 61 Tenn.App. 596, 457 S.W.2d 35 (1970), on which Maryland Casualty relies.

company, it should then try the issue of whether Maryland Casualty acted reasonably and in good faith in rejecting Smith's offer to settle the case for the policy limit, as determined in a declaratory judgment action in the South Carolina courts. Under South Carolina law, the issue of the reasonableness and good faith of the insurance company's action is to be determined by a jury when, as here, one has been demanded. *Tyger River*, 170 S.C. at 293, 170 S.E.2d at 348. If the jury finds that the insurance company acted unreasonably or in bad faith in rejecting Smith's offer, the court shall enter judgment against Maryland Casualty in the amount of the judgment awarded by the jury against McNeese in the negligence case, interests and costs, less any payment made by Maryland Casualty on the judgment. *See Andrews v. Central Surety Insurance Co.*, 271 F.Supp. 814, 821 (D.S.C.1967), *aff'd* 391 F.2d 935 (4th Cir.1968). Smith shall recover his costs of this appeal.