0852

Everette THOMPSON, Michelle Thompson and Joseph Lester Faulkenberry, Appellants v. CONTINENTAL INSURANCE COMPANIES, Respondent.

(351 S. E. (2d) 904)

Court of Appeals

*George W. Speedy, William S. Tetterton,* and *Jeffrey M. Tzerman,* Camden, *for appellants.*

*Ronald E. Boston,* Columbia, *for respondent.*

Heard Dec. 11, 1986.

Decided Dec. 29, 1986.

*Per Curiam:*

In this declaratory judgment action, Everette and Michelle Thompson and Joseph Lester Faulkenberry sought a determination of the applicable limit of coverage under a policy of liability insurance issued by Continental Insurance Companies. The plaintiffs sought to "stack" the $100,000.00 limit of liability in a policy covering two automobiles. The trial judge ruled the liability coverage could not be stacked. The plaintiffs appeal. We affirm.

Continental issued a "Personal Comprehensive Protection" insurance policy to Faulkenberry and his wife. Two vehicles were listed as insured, with a $100,000.00 limit of liability coverage for each accident. Faulkenberry, while driving one of the insured cars, had a collision with another

car in which Michelle Thompson, a passenger in the other car, was injured. Continental paid Mrs. Thompson $100,000.00 in a settlement. In the settlement agreement with Continental, Thompson and Faulkenberry reserved the right to bring a declaratory judgment action to determine whether the $100,000.00 liability limit could be "stacked" by virtue of the policy covering two automobiles where only one of the automobiles was involved in the accident.

The trial court's order ably sets forth and disposes of the issues before this Court. We, therefore, adopt the pertinent portion of his order and publish it as our opinion.

## ORDER OF JUDGE ERVIN

### RULES OF CONTRACT
### CONSTRUCTIONS

Determination of the issue presented requires a reading, and if necessary, interpretation of the insurance contract, and there are, in this regard, several established rules of construction that this Court must follow. An insurance policy is simply a contract between an insurer and an insured. It is therefore subject to the general rules of contract construction, and the contract terms should, if not uncertain, be read and given effect as reasonably intended by the parties. In *Gambrell v. Travelers Insurance Company*, 280 S. C. 69, 310 S. E. (2d) 814 (1983), the Supreme Court, at 816, held:

> Insurance policies are subject to general rules of contract construction [citing cases]. We must enforce, not write, contracts of insurance and we must give policy language its plain, ordinary and popular meaning. We should not torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties [citing cases].

It is true that in the case of a conflict or ambiguity, insuring clauses are to be liberally construed in favor of an insured and against an insurer. However, this rule of strict construction "merely serves the purpose of tipping the scales against an insurer when the other aids to interpretation are in equipoise, and the policy under consideration may reasonably be given one of several constructions." *Provident Life & Accident Insurance Company v. Anderson*, 166

F. (2d) 492 (4th Cir. 1948). This rule of interpretation is clearly recognized in *Torrington v. Aetna Casualty and Surety Company*, 264 S. C. 636, 216 S. E. (2d) 547 (1975), where the Supreme Court held:

> [W]e have kept in mind our own line of cases holding that ambiguous insuring clauses should be liberally construed in favor of the insured. At the same time, the parties have a right to make their own contract and it is not the function of this court to rewrite it or torture the meaning of a policy to extend coverage never intended by the parties. The contract must be interpreted in light of the whole agreement in such a way as to carry out the intentions of the parties.

Further, in *S. S. Newell & Company v. American Mutual Liability Insurance Company*, 199 S. C. 325, 19 S. E. (2d) 463 (1942) the Court held:

> The rule of strict construction against the insurer does not apply where the language used in the policy is so plain and unambiguous as to leave no room for construction [citing cases]. Nor does the rule of strict construction authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.
>
> The judicial function of a court of law is to enforce an insurance contract as made by the parties, and not to rewrite or to distort, under the guise of judicial construction, contracts, the terms of which are plain and unambiguous. It is not the province of the courts to construe contracts broader than the parties had elected to make them or to award benefits where none was intended.

In determining the rights and obligations of the parties to an insurance contract, the contract must be read and interpreted as a whole. *Hall v. Allstate*, 284 S. C. 62, 324 S. E. (2d) 341 (S. C. Ct. App. 1984). See also 43 Am. Jur. (2d), *Insurance* 275.

## TERMS OF POLICY

With these recognized principles of contract construction in mind, this Court first must consider the specific applica-

ble provisions of the insurance contract here in question. The provisions germane to the issue are found in "PART 4: LIABILITY" beginning at page 20. Section A, subsection 2, contains the bodily injury liability coverage extended by the policy and provides in pertinent part:

> We will pay any amount up to the Limit of Coverage for which a *covered person* becomes legally liable as a result of *bodily injury or property damage* that is caused by an accident.

Sections B., C. and D. of PART 4 that follow are not relevant to the question at hand.[3] Section E. at page 24 is entitled "MAXIMUM PAYMENTS UNDER YOUR LIABILITY COVERAGES" and provides in pertinent part:

> For all claims from a single accident the most we will pay is the Limit of Coverage for Liability shown on the Coverage Data Page.

> \* \* \* \* \* \*

> If two or more vehicles are covered under this policy, the Limit of Coverage applies separately to each.

The Coverage Data Page,[4] that forms PART 1 of the policy, provides in pertinent part:

> All insurance stated in the Coverage Data Pages to apply under any provisions or part of this policy is subject to all the provisions of the policy applicable thereto and to the following Limits of Coverage.

Directly below this sentence appears a declaration of the limit of coverage for each part of the policy, and the limit of coverage for "PART 4 LIABILITY" is declared "EACH ACCIDENT, $100,000.00." The Coverage Data Page also has designated spaces for listing and identifying "insured locations," "insured autos" and "boats and outboard motors." In the space provided for insured automobiles, two automobiles are listed and identified.

---

[3] [Footnote omitted].
[4] [Footnote omitted].

## CONCLUSIONS OF LAW

Premised upon these terms of Continental's policy, Plaintiffs contend that because the policy (1) insures two automobiles owned by Faulkenberry and (2) contains a separability clause, Faulkenberry can reasonably read his contract to provide double the stated limit of coverage, or that an ambiguity exists which, when construed favorably to Faulkenberry, reasonably leads this Court to the conclusion that his contract provides double the stated limit of coverage. In support of this contention, Plaintiffs rely exclusively on the decision in *Kraft v. Hartford Insurance Company*, 279 S. C. 257, 305 S. E. (2d) 243 (1983). Although, on its surface, *Kraft* seems to lend support to Plaintiffs' argument, for the reasons discussed below its holding is clearly distinguishable and not controlling here.

The simple reason that *Kraft* is distinguishable is that the language of Hartford's separability clause construed by the Court in *Kraft* and leading to its result is materially different from the separability clause in Continental's policy. Hartford's separability clause provided in pertinent part:

> 4. Two or More Automobiles — Sections I, II, and IV: When two or more automobiles are insured hereunder, *the terms of this policy shall apply separately to each. . . .* (Emphasis added).[5]

Premising its decision to allow "stacking" on this language, the Court in *Kraft* stated:

> The separability clause of the policy, however, clearly indicates each vehicle should be treated as if insured on a separate policy with respect to the liability, medical payments, and physical damages sections (Section I, II and IV) of the policy.
>
> \*　\*　\*　\*　\*　\*
>
> [W]hile Hartford does not concede one who has non-owned vehicle coverage on vehicles listed on separate policies with the same or different insurance companies

---

[5] This is the typical separability clause that is found in automobile insurance policies. *See* 7A Am. Jur. (2d). *Automobile Insurance*, § 425 and cases cited therein.

should be allowed to stack the coverage, it would be difficult to argue otherwise.

It is unquestionably clear from this statement of the Supreme Court that its allowance of "stacking" of the non-owned vehicle coverage in *Kraft* directly resulted from the Court's treatment of each owned automobile as if it were insured on a separate policy; and its finding of the theoretical "separate policy" stemmed directly from the plain policy" stemmed directly from the plain language of Hartford's separability clause that "the terms of this policy shall apply separately to each."

In contrast, the plain language of Continental's separability clause is materially and distinctly different and deserves repeating:

> If two or more vehicles are covered under this policy, *the limit of coverage applies separately to each.* (Emphasis Added).

This language is plain, clear and unambiguous and does not require interpretation. It simply does not reasonably lead this Court to the *Kraft* result. The clause does not apply the "terms" of Continental's policy separately to each listed insured automobile. It only applies the "Limit of Coverage" under a single policy separately to each owned automobile. Unless this Court is to rewrite the language of this clause or torture its ordinary meaning to extend coverage that was never intended, this clause provides no basis upon which to treat each listed automobile as if insured under separate policies or to allow "stacking" under the holding of *Kraft*.

What then is the purpose of this language in Continental's policy? This Court has found no authority from South Carolina or other jurisdictions dealing with the specific language of Continental's separability clause. However, when this Court interprets the insurance contract in light of the whole of its provisions and gives this language, as it must, its plain and ordinary meaning, the clause applying the limit of coverage separately to each listed automobile merely assures the applicability of the "Limit of Coverage" to whichever listed automobile, or all of them, that may be involved in an accident. *Pacific Indemnity Company v. Thompson*, 355 P. (2d) 12 (S. Ct. Wash. 1960); *Basso v. Allstate Ins. Co.*, 19 Ariz.

App. 58, 504 P. (2d) 1281 (1973); *Community Service Ins. Co. v. Price*, 41 Mich. App. 604, 200 N. W. (2d) 450 (1972); *Rosar v. General Ins. Co.*, 41 Wis. (2d) 95, 163 N. W. (2d) 129 (1968); *Greer v. Assoc. Indem. Co.*, 371 F. (2d) 29 (5th Cir. 1967).

This Court's reading of Continental's separability clause is also completely consistent with the requirements of Section 56-9-820 of the Code of Laws of South Carolina (1976), concerning the issuance by insurers of automobile policies in South Carolina. In *Nationwide Mutual Ins. Co. v. Bair*, 257 S. C. 551, 186 S. E. (2d) 410 (1972), the Supreme Court was called upon to construe the requirements of this section:

> Section 46-750.32, Code of 1962 [now Section 56-9-820], as amended, forbids the issuance of a policy of automobile liability insurance "unless it contains a provision insuring ... against loss from ... liability ..., subject to limits exclusive of interest and costs, *with respect to each motor vehicle,* as follows: [the court continued to quote the required limits applicable in 1962 but not now].

Concluding that the "stacking" of policy limits is not required by statute where liability coverage is concerned, the court in *Bair* held:

> We think it is clear that this phrase, "with respect to each motor vehicle," as used in Section 46-750.32 [now 56-9-820], plays no part in fixing the minimum dollar limits required of *liability* coverage. Rather it relates to the scope of the policy, *assuring its application to any one of the listed vehicles which becomes involved in an accident, regardless of what liability may already have accrued to the insurer by reason of other accidents involving other vehicles insured by the policy. See* the cases collected at 37 A.L.R. (3d) 1263 (1971), several of which attribute this import to policy language analogous to the statutory phrase in question. (Emphasis added).

The language of Continental's policy plainly assures the application of the $100,000.00 limit of coverage to any one of Faulkenberry's listed vehicles that may become involved in an accident in observance of this statutory requirement, and

it does no more. It should be added that the annotation in 37 A.L.R. (3d) cited by our Court in *Bair* is in complete accord with this view, and there are no cases from any jurisdiction that support a contrary view.[6]

Under this Court's reading of Continental's policy, if Mr. Faulkenberry is driving one of the listed automobiles, while at the same time Mrs. Faulkenberry, or any other insured person, is driving another, and both automobiles are involved in accidents, his policy assures that a limit of $100,000.00 applies to each of the automobiles; and the policy provides protection in the limit of $100,000.00 separately to each of them for liability that may arise as a result of each separate accident. There is no reasonable basis or expectation for Mr. Faulkenberry to read the policy otherwise.

For the reasons stated above, the judgment is

Affirmed.

---

[6] Note in the annotation that even the cases construing the typical separability clause find no ambiguity that permits "stacking" with regard to liability coverage for more than one owned automobile in a single policy, where only one of them is involved in an accident.