Sara J. PARSONS, Respondent,

v.

Alva M. PARSONS, et al., Timothy Lindholm, et al., State Farm Fire and Casualty Company, Respondents,

Horace Mann Insurance Company, Appellant,

Western Indemnity Company, et al., Respondents.

No. C5–87–924.

Court of Appeals of Minnesota.

Oct. 6, 1987.

James R. Schwebel, Schwebel, Goetz & Sieben, P.A., Minneapolis, for Sara J. Parsons.

Lee L. LaBore, Lee L. LaBore & Associates, Ltd., Hopkins, for Alva M. Parsons, et al.

Kay N. Hunt, John P. Lommen, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for Timothy Lindholm, et al.

R.D. Blanchard, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for State Farm Fire and Cas. Co.

Mark A. Gwin, Robert J. McGuire, Cousineau, McGuire, Shaughnessy & Anderson, Chartered, Minneapolis, for Horace Mann Ins. Co.

George W. Flynn, Faegre & Benson, Minneapolis, for Western Indem. Co., et al.

Heard, considered and decided by HUSPENI, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

HUSPENI, Judge.

This is an appeal by Horace Mann Insurance Company from a summary judgment entered February 25, 1987, in favor of respondent, Sara J. Parsons. The trial court declared that two policies issued by appel-

lant to the insured provided concurrent non-owned vehicle liability coverage for a total available coverage of $600,000.00. Appellant contends that the coverage was stacked contrary to Minnesota law. General Casualty Company of Wisconsin, a party defendant, concurs with appellant's argument. We affirm.

## FACTS

On July 20, 1984, respondent was a passenger in a 1978 Ford Fiesta at the time it was involved in a collision with another vehicle. The Fiesta was insured through State Farm Fire and Casualty Company which provided bodily injury liability coverage, and was being driven by the respondent's sister, Alva Parsons, with permission of the owner, Earl Mattson.

Alva Parsons lived with her parents at the date of the collision. It was undisputed that as a relative she was an insured under the terms of two automobile policies issued to her parents by appellant. Separate premiums were paid for each policy and identical coverage received by each of Alva Parson's parents. The liability coverage was extended to the permissive use by the insured of a non-owned vehicle.

Section 1 of each policy detailed the extent of the non-owned vehicle coverage. The provisions of each policy included an "other coverage" clause which stated:

If an insured is using a * * * *non-owned car, our* liability insurance will be excess over other collectible insurance. If more than one policy applies to an accident involving *your car, we* will bear *our* proportionate share with other collectible liability insurance.

(Emphasis in original.) The policy had a liability limit for bodily injury of $300,000. No premiums for any type of coverage were listed in the declarations section of the policies.

As a result of her injuries, respondent was rendered quadriplegic. In July 1986, she brought a declaratory judgment action against Alva Parsons, Earl Mattson, the fourth occupant of the car and three insurance companies. In February 1987, two additional insurance companies were joined

as parties defendant. Respondent sought, in part, a declaration that the non-owned vehicle liability coverage of $300,000.00 under each policy provided by appellant was available to her. Subsequently, she moved for summary judgment on the issue.

The trial court granted respondent's motion, determined there was no just reason for delay of entry of judgment, and summary judgment was entered on February 25, 1987. This appeal resulted.

## ISSUES

1. Did appellant raise an issue of fact which was material to the granting of summary judgment?

2. Did the trial court improperly apply Minnesota law when it declared that two automobile insurance policies issued by a single insurer to cover two vehicles provided concurrent non-owned vehicle liability coverage?

## ANALYSIS

On appeal from the grant of a summary judgment, our review is limited to determining whether there was any genuine issue of material fact and whether the trial court properly interpreted the applicable law. *L & H Transport, Inc. v. Drew Agency, Inc.*, 403 N.W.2d 223, 227 (Minn.1987); *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

### I.

■ Appellant contends that there was a genuine issue of material fact as to whether a specific premium was assessed for non-owned vehicle coverage for each insured automobile. However, the question does not appear to have been raised at any time in the pleadings, depositions, answers to interrogatories or admissions on file. Minn.R.Civ.P. 56.03. Issues which are not properly raised before the trial court cannot be raised for the first time on appeal. *Soukup v. Molitor*, 409 N.W.2d 253 (Minn. Ct.App.1987); *Eakman v. Brutger*, 285 N.W.2d 95 (Minn.1979).

The parties disagree whether this issue may have been raised before the trial court

during oral argument on the summary judgment motion. Assuming for the purposes of our analysis that appellant did raise the issue of non-payment of premium in oral argument before the trial court, we conclude that compliance with the requirements of Minn.R.Civ.P. 56.03 still would be lacking. That rule requires that "judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Further, rule 56.05 of Minn.R.Civ.P. provides that "[w]hen a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon mere averments or denials of his pleading but must present specific facts showing that there is a genuine issue for trial." The issue of premium payment was not raised in any of the documents enumerated in rule 56.03, and therefore was not properly before the trial court for consideration.

■ We note further, however, that even if the issue of non-payment of premiums had been properly raised, it would not have created an issue of material fact so as to defeat the award of summary judgment. Appellant, as insurer, had within its control the information on the issue of premium payment. Yet it produced no authority to support an argument that validity of non-owned vehicle coverage depended upon a separate premium being charged therefor. There is, indeed, no indication by appellant that it is to any extent industry practice to "break-out" and state separately the non-owned vehicle liability premium from the primary liability premium. Finally, the cases cited for the proposition that an insurer should not "have a windfall in premiums for coverages not honored," *Yaeger v. Auto-Owners Insurance Company*, 335 N.W.2d 733 (Minn.1983); *Van Tassel v. Horace Mann Insurance Co.*, 296 Minn.

181, 207 N.W.2d 348 (1973); and *Hilden v. Iowa National Mutual Insurance Company*, 365 N.W.2d 765 (Minn.1985), do not stand for the opposite proposition that failure to pay a specified premium compels a finding of no coverage. Also, these cited cases involve statutorily mandated coverages not discretionary coverages subject to contractual terms of the policy such as non-owned vehicle coverage. The presence or absence of a separate premium for non-owned vehicle liability coverage raises no material fact question and is irrelevant to the issues in this case.

## II.

Appellant does not dispute that the physical injury liability limits on one policy are available to respondent in the event appellant is liable for payments pursuant to the policy. However, appellant resists the proposal that limits of both policies are available to respondent, and contends that in declaring both policy limits available, the court in effect allowed stacking of liability coverage, contrary to Minnesota law.[1]

Liability coverage is required by Minn. Stat. § 65B.49 (1982) and insures the ownership, maintenance and use of a particular vehicle. The Minnesota Supreme Court has held:

> Liability coverage follows the vehicle and not the person and there can be no stacking of liability coverage.

*Hilden* at 769. Minnesota cases have applied the rule against stacking liability coverage only to primary liability coverage. No Minnesota case has extended the prohibition to non-owned vehicle coverage.

Appellant cites *Emick v. Dairyland Insurance Company*, 519 F.2d 1317 (4th Cir. 1975) in support of its argument that the rule against stacking should be extended to preclude stacking of non-owned vehicle coverage. In *Emick*, the fourth circuit determined non-owned vehicle coverage was lia-

---

1. Respondent cites *Grange Mutual Companies v. Bradshaw III*, 724 S.W.2d 216 (Ky.Ct.App.1986) and *Kraft v. Hartford Insurance Companies*, 279 S.C. 257, 305 S.E.2d 243 (1983) to support the argument that respondent should recover the policy limits under both policies. We find

*Grange Mutual* inapplicable in this case. The *Kraft* court allowed stacking of non-owned vehicle coverage on the basis of the separability clause in the insurance policy. We do not rely on *Kraft*.

bility coverage and could not be stacked. The court reasoned that:

> [a] non-owned automobile merely substitutes for, or stands in the place of, one of the named insured's owned and listed automobiles, and the bodily injury liability package with its per person and per occurrence limits, attaches to this non-owned automobile for as long as the insured is potentially subject to liability arising out of its maintenance or use.

> If an insured is in an accident while he is driving one of the cars described in a policy, covering two or more cars, the liability coverage for bodily injury is *not doubled* or multiplied by the number of cars in the policy; and there is no sound reason why there should be a doubling or multiplying of the limits of liability simply because the insured was operating a non-owned car.

*Id.* at 1326–27 (emphasis in original). The *Emick* court likened non-owned vehicle coverage to primary liability coverage and discerned no difference between the two.

The policies issued by appellant treat liability coverage as primary coverage and non-owned vehicle coverage as excess coverage. If the insured had been driving one of the named vehicles when respondent was injured, appellant would pay a proportionate share of the total primary liability up to a maximum of $300,000. Certainly, under the doctrine prohibiting the stacking of this primary liability coverage, appellant would have no duty to pay any additional primary liability sums, even though a second vehicle in the family also had primary liability limits of $300,000.

The situation here is not one involving primary liability, however. Alva Parsons was driving a non-owned vehicle at the time of the accident. The insurance coverage obtained by Earl Mattson was "closest to the risk" and was the primary liability insurance available to respondent. Had that insurance been sufficient to wholly satisfy the damages suffered by respondent, appellant's excess coverage would never have been invoked. Appellant was liable to provide benefits only when the policy limits on Mattson's vehicle had been exhausted.

Although it is clear that the non-owned vehicle coverage in *Emick* was also excess coverage, *id.* at 1322 n. 6, the fourth circuit did not address that distinction in its analysis. Neither did it address the "other coverage" clause in the policy at issue. We have no indication of what that clause provided. The failure of the *Emick* court to make any distinction between primary liability and excess liability coverage and to identify policy language relating to non-owned vehicle coverage greatly hampers any attempt by this court to analogize to or to apply that case in the context of the facts before us.

We believe the distinction between primary and excess liability coverage cannot be ignored. Alva Parsons was an insured under two policies issued to her parents. Appellant does not dispute that had the policies been provided by two different insurers, there would be concurrent liability and each insurer would pay a pro rata share of the excess, as determined by the "other coverage" clauses, up to a maximum of each policy's limits. However, appellant argues that concurrent liability can only arise when there are "two or more companies" fully liable for the loss, and that when the same insurer issues each policy, the principle does not apply. This distinction is without basis in logic and we cannot agree.

At the date of the collision, non-owned vehicle liability coverage was not mandated. Parties to an insurance policy were, therefore, free to contract as they chose. Here each policy covered a particular vehicle and each policy provided non-owned vehicle coverage. Appellant argues that only one policy can provide coverage for the insured on the basis of the contract terms. We find no language in the insurance contract which limits liability in the manner urged by appellant. The only limitation imposed on the non-owned vehicle coverage was that it was "excess over other collectible insurance." No attempt has been made by respondent to classify the non-owned vehicle excess liability coverage

as primary liability coverage. In this context we note that *Hilden,* relied upon by appellant, involved primary liability coverage on each of three owned vehicles and the attempt by the insured, after exhausting the liability limits on the vehicle involved in the accident, to draw upon the primary liability coverage of the remaining insured vehicles. This was a clear attempt at stacking and was contrary to law.

The contract language in the policies at issue here is susceptible of only one interpretation: coverage under each policy was triggered when the insured drove a non-owned vehicle. Unquestionably appellant could have limited the non-owned vehicle coverage so as to be available under only one of the policies. It did not. We conclude that in the absence of such limiting language, each policy provided non-owned vehicle coverage for the driver of the vehicle.

### DECISION

A summary judgment was properly granted where there was no issue of material fact. The trial court properly applied Minnesota law to determine that concurrent non-owned vehicle coverage was provided by two motor vehicle insurance policies issued by the same insurer.

Affirmed.